## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DROPCASES, LTD.,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A<br><br><br>                    Defendants. | Case No. 24-cv-02589-JLR<br><br>JURY TRIAL DEMANDED |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION**

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     STATEMENT OF FACTS ................................................................................1

        A.      Plaintiff's '469 Patent and Successful Products ......................................1

        B.      Enter the Knockoffs.................................................................................3

        C.      Defendants' Common Infringing and Predatory Activities.....................4

III.    ARGUMENT .....................................................................................................4

        A.      This Court Has Personal Jurisdiction Over Defendants ..........................4

                1.      Defendants Are Subject to Long-Arm Jurisdiction in New York ..................5

                2.      Personal Jurisdiction Comports with Due Process ..........................7

        B.      Plaintiff Is Entitled to an Ex Parte Temporary Restraining Order .........7

                1.      Plaintiff is Likely to Succeed on Its Infringement Claim...............8

                2.      Plaintiff Will Be Irreparably Harmed Without an Injunction.......10

                3.      The Balance of Hardships Favors Plaintiff....................................15

                4.      A Preliminary Injunction Will Not Disserve Public Interest........16

        C.      The Defendant Internet Stores and Related Assets Should Be Frozen.................16

        D.      Service of Process by E-mail and/or Electronic Publication Is Warranted ..........17

        E.      Expedited Discovery is Warranted in This Case ...................................19

        F.      A Limited Bond Should Secure the Injunctive Relief...........................20

IV.     CONCLUSION ...............................................................................................21

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020)........................8

*AdMarketplace, Inc. v. TeeSupport Inc.*, 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) .............19

*Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013) ....................................14

*AW Licensing, LLC v. Bao*, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. Apr. 1, 2015)................16

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015)). ....................................8

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239  (2d Cir. 2007)......................................................4, 5

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ......................................................................6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................................................7

*Calder v. Jones*, 465 U.S. 783 (1984) .............................................................................................7

*Cengage Learning, 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018)*...........................................18, 21

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ......................................5

*Conopco, Inc. v. 2026 Third Realty, LLC*, 22 Civ. 3480 (AT)  (S.D.N.Y. Apr. 29, 2022) ...........20

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010)................................8, 9

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 893 F. Supp. 508 (D. Md. 1995), .......13

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996). ......................................................20

*Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336 (Fed. Cir. 2013)..........10, 13, 14

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008)....................7

*EnviroCare Techs., LLC v. Simanovsky*, 2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012)6

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015).............................9

*Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511 (1872)). .........................................................8

*Grand River Enter. Six Ntns., Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007).....................................11

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted)..........6

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014) ................................................16

*Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) ......................................19

*Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, 11 Civ. 7211 (PGG), 2012 U.S. Dist. LEXIS 103864 (S.D.N.Y. July 24, 2012)................................................................................................................11

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010).................................................15

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .........................................................................5

*L.A. Gear, Inc. v. Thom McAn*, 988 F.2d 1117 (Fed. Cir. 1993).....................................................9

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) ..............................................4, 5

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016)..............................................................................6

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d Cir. 1992) ...........................................................................................................................................8

*Milliken v. Meyer*, 311 U.S. 457 (1940) ..........................................................................................7

*Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9, 2011).......................12

*North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted) ..............................................................................................17

*PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558  (Fed. Cir. 1996)................................16

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359 (Fed. Cir. 2001) .............12

*Reebok Int'l Ltd. V. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994) ...............................................13

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)...........................................18

*Robert Bosch v. Pylon Mfg. Corp*, 659 F.3d 1142  (Fed. Cir. 2011)..............................................15

*Rosen Entm't Sys., LP v. Eiger Vision*, 343 F. Supp. 2d 908 (C.D. Cal. 2004) .............................15

*Samsung Electronics Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429 (2016).................................................8

*Sirius XM Radio Inc. v. Aura Multimedia Corp.*, 339 F.R.D. 592 (S.D.N.Y. 2021).....................18

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006)). ...............5

*Thomas Publ'g Co. v. Indus Quick Search*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002)........................6

*Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021) ...............................................18

*Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, 2021 WL
    1249631 (S.D.N.Y. Apr. 5, 2021) .............................................................................................21

*Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995 (Fed. Cir. 1986).............................................16

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) ......................................................................................15

Statutes

35 U.S.C. § 154 ...............................................................................................................................10

35 U.S.C. § 283 ...............................................................................................................................10

35 U.S.C. § 289 ...............................................................................................................................21

Fed. R. Civ. P. 26(b)(2) ..................................................................................................................25

Fed. R. Civ. P. 26(d)(1)). ................................................................................................................25

Fed. R. Civ. P. 65(b). ........................................................................................................................9

Fed. R. Civ. P. 65(d)(2)(C). ............................................................................................................26

N.Y. C.P.L.R. § 302(a)(1) ................................................................................................................5

## I.    INTRODUCTION

Dropcases Ltd. ("Dropcases" or "Plaintiff") respectfully submits this motion and memorandum of law in support of its ex parte motion for: (1) a temporary restraining order and order to show cause as to why a permanent injunction should not issue; (2) a temporary asset restraint; (3) expedited discovery; and (4) service of process by e-mail and/or electronic publication. Defendants are sellers of copycat electric vehicle charging adapters that infringe Plaintiff's U.S. Patent No. D1,018,469 (the "'469 Patent"). Defendants' conduct has taken market share from Plaintiff, eroded the price of Plaintiff's products, diluted the uniqueness of Plaintiff's design, and negatively impacted their reputation by selling inferior knockoffs. As such, emergency relief is warranted.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's '469 Patent and Successful Products

Plaintiff Dropcases Ltd. is a citizen of Hong Kong and the owner of all rights under U.S. Design Patent No. D1,018,469, titled "CHARGING ADAPTER" (the "'469 Patent"). The '469 Patent was filed on May 17, 2022, and issued on March 19, 2024. Maiwald Decl., ¶ 11. *See also* Compl., Dkt. No. 1, Exh. 2. Plaintiff is the owner of all right, title, and interest in the '469 Patent by assignment dated August 18, 2023, and recorded with the United States Patent and Trademark Office at reel/frame 064630/0584. *See* Declaration of Christopher Maiwald ¶ 12 ("Maiwald Decl." filed simultaneously herewith).

The Plaintiff is in the business of designing, manufacturing, and selling consumer electronic products, primarily through e-commerce platforms such as Amazon. Among these products, Plaintiff sells charging adapters for electric vehicles. Maiwald Decl., ¶ 2.

Multiple standards for charging electric vehicles exist, with some standards having more publicly available compatible chargers than others. Maiwald Decl., ¶ 3. Plaintiff's charging

adapters give owners of certain makes of electric vehicles the ability to access a broader network of electric vehicle chargers. Specifically, Plaintiff's Tesla to J1772 Charging Adapter ("Plaintiff's EV Adapter") enables owners of vehicles using the SAE J1772 standard to access the ubiquitous Tesla destination network. Maiwald Decl., ¶ 3-4. Plaintiff's EV Adapter is the commercial embodiment of the '469 Patent.  Maiwald Decl., ¶ 11.

After it was launched on Amazon, Plaintiff's EV Adapter enjoyed remarkable success— for a time. Maiwald Decl. ¶¶ 13-15.  Plaintiff's EV Adapter was released on Amazon in January 2022 and to date has sold more than 43,000 units, generating sales revenue of $6,775,689 and a profit of $3,049,060. Maiwald Decl., ¶¶ 5-6. By August 2022, the Product sold 2,300 units per month and reached third position in Amazon's best-seller rankings. Maiwald Declaration ¶ 13.

Critical to the success of Plaintiff's EV Adapter was its eye-catching ergonomic design detail, Maiwald Decl., ¶ 15. Plaintiff recognized that in the hyper-competitive Amazon marketplace, a stylish and attention-grabbing design was essential and aimed to distinguish it from other competing designs. Maiwald Decl., ¶ 10. Plaintiff put the aesthetics of its EV Adapter at the top of the design consideration list, second only to safety. *Id*.

Plaintiff's development in design and development was extensive, requiring roughly $1.6M when factoring in early-stage marketing. Maiwald Decl., ¶ 9. The planning and design process for the EV Adapter involved "meticulous effort." Maiwald Decl., ¶ 7. The Plaintiff dedicated $124,000 to product development and tooling, focusing on enhancing the previous generation of the Product into a more ergonomic and stylized design.  *Id*.

By December 2022, however, competitors had noticed Plaintiff's success, and the market was flooded with low-quality knockoffs. Maiwald Decl. at ¶ 16.

### B.    Enter the Knockoffs

Starting around December 2022, sales of the Product sharply declined due to the influx of infringers entering the market. From the peak of 2,300 units per month, both sales and price rapidly declined. Maiwald Decl., ¶¶ 13, 16. Unauthorized Accused Products listed on Amazon drove the market price down to $66.95, while Plaintiff maintained a price of $159.99, which was necessary to recoup its investment. Maiwald Decl., ¶ 16. This price discrepancy led to a significant loss in sales revenue opportunity, amounting to over $400,000 per month, and a decrease in profit opportunity of over $180,000 per month. *Id.*

In conversations with some of its larger institutional customers, Dropcases has continued to receive pressure to reduce its prices with certain of Defendants' products cited as exemplars. Maiwald Decl., ¶ 18. At least one national U.S. retailer of electric vehicle accessories has intimated that Dropcases' in-store program could be compromised if it did not reduce its prices to come closer to the pricing offered by certain of the Defendants. Maiwald Decl., ¶ 20.

Since the '469 Patent issued on March 19, 2024, these trends have accelerated, and Dropcases' leadership believes that the ongoing infringement of Defendants will cause further decline in Plaintiff's market share, erode prices for the Product, and otherwise diminish Plaintiff's extensive investment in the design, sales, and marketing of the Product. Maiwald Decl., ¶ 19.[1]

---

[1] Plaintiff's '469 Patent issued on March 19, 2024. Except in limited circumstances not applicable here, a party cannot be awarded damages for infringement that occurred before the issue date of the patent. *See* 35 U.S.C. §§ 154(a)(2), § 154(d). Plaintiff does not argue that it is entitled to recovery of damages for pre-issuance activities. Rather, Plaintiff's exposition in this memorandum of facts related to pre-issuance activity by the Defendants is meant to illustrate a pattern of harm that continues to this day and which Plaintiff seeks to remedy by its Ex Parte Application for TRO.

C.      **Defendants' Common Infringing and Predatory Activities**

Plaintiff has identified numerous fully interactive commercial Internet stores operating through Amazon in Schedule A attached to the Complaint (collectively, the "Defendant Internet Stores"). These Defendant Internet Stores sell infringing knockoff products (the "Accused Products") that infringe Plaintiff's design patent rights from foreign countries to consumers in this Judicial District. Maiwald Decl., ¶ 25.

Plaintiff's allegations regarding similarities among the Accused Products, similarities among the Defendant Internet Stores, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are acting in concert, sourcing from common suppliers, or using aliases to shield multiple accounts. Maiwald Decl., ¶ 22-24. The Accused Products bear many of the same features, suggesting a common origin. Compl., Exh. 1.

Defendants can operate on Amazon with relative anonymity, keeping their identities secret and the making it virtually impossible for Plaintiff to discover who is behind the operation, where they operate, whether and how they act in concert with other Defendants and their suppliers, and the overall relationship among Defendants. Maiwald Decl., ¶¶ 21-24. Should Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

III.    **ARGUMENT**

A.      **This Court Has Personal Jurisdiction Over Defendants**

In a federal question case such as this, the personal jurisdiction determination requires a two-step inquiry. First, courts must look to the law of the forum state to determine whether personal jurisdiction lies therein. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013). If jurisdiction lies, then the court considers whether the district court's exercise of personal

jurisdiction over the foreign defendant comports with constitutional due process protections. *See id*. *See also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[2]

Defendants' unlawful infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1). Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with constitutional due process.

### 1.  Defendants Are Subject to Long-Arm Jurisdiction in New York

Under N.Y. C.P.L.R. § 302(a)(1), two requirements must be met to establish personal jurisdiction. First, "[t]he defendant must have transacted business within the state." *Licci*, 732 F.3d at 168 (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). Second, "the claim asserted must arise from that business activity." *Id.*

To determine whether a defendant "transacts business" in New York, courts must look at the totality of the circumstances. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). It is not necessary that a defendant be physically present in New York, so long as it engages in some "purposeful activity" by which it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010). Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Citigroup*, 97 F. Supp. 2d at 565.

The second prong of the § 302(a)(1) inquiry requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, a "causal

---

[2] Many Defendants, if not all, have obfuscated their physical location on their Amazon storefronts. Maiwald Decl. ¶¶ 21-22. It is assumed that all Defendants are located outside of New York and qualify as "foreign" defendants. *Id*.

relationship" between the two is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted). Rather, it is sufficient that "the latter is not completely unmoored from the former." *Id.*

This Court may properly exercise personal jurisdiction over Defendants under § 302(a)(1) because the Defendants operate fully interactive websites through which consumers in New York can purchase the infringing products. *See Chloe*, 616 F.3d at 170. Jurisdiction is proper when Internet sellers use their storefronts "as a means for establishing regular business with a remote forum." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 2016 U.S. Dist. LEXIS 89149 at *7-8 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11 Civ. 3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 at *8 (E.D.N.Y. June 4, 2012). Indeed, there is "no inequity" in subjecting the operator of such a storefront to personal jurisdiction in New York, as a defendant is always "free to set up a passive website that does not enable [it] to transact business in New York." *Thomas Publ'g Co. v. Indus Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002).

Here, each of the Defendants operate an Amazon storefront in which they directly target business activities toward American consumers, including in New York, by offering infringing products for sale in this judicial district. The storefronts enable consumers in New York to inquire and communicate with Defendants, purchase infringing goods, and receive the infringing goods in New York. Maiwald Decl., ¶ 25.

Defendants have chosen to sell the Accused Products on their respective Defendant Internet Stores, supporting a finding that Defendants intentionally use Amazon "as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at *10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)). Moreover, a plurality

of reviews on listings for Defendants' infringing products reflects multiple sales to consumers in the United States, confirming that Defendants are sophisticated sellers operating commercial businesses through Amazon and subjecting them to jurisdiction in New York. *Id*. at *10.

2.    Personal Jurisdiction Comports with Due Process

Asserting personal jurisdiction over Defendants also comports with constitutional due process as Defendants have "certain minimum contacts . . . such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984). Defendants intentionally directed activity toward the New York market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

**B.    Plaintiff Is Entitled to an Ex Parte Temporary Restraining Order**

Plaintiff makes this extraordinary request for an ex parte order because such relief is essential to prevent further immediate and irreparable injury to Plaintiff.

A temporary restraining order may be granted without written or oral notice to the opposing party where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." *See* Fed. R. Civ. P. 65(b).

In this Circuit, a party seeking to obtain a preliminary injunction must demonstrate (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of a restraining order; (3) that the balance of hardships favors the moving party; and (4) that the public interest will not be disserved if a restraining order issues. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020) (citing *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015)). The "standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).

An issued patent gives the owner the right to exclude other from making, using, selling, offering to sell, and importing goods that embody the patent. *See* 35 U.S.C. § 154. Essential to that right to exclude is injunctive relief as a remedy for infringement of the patent. *See* 35 U.S.C. § 283: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

Plaintiff meets the standard for a preliminary injunction and the Court should therefore enter a temporary restraining order.

1. Plaintiff is Likely to Succeed on Its Infringement Claim

"[A] a design patent is infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Samsung Electronics Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 525 (1872). The proper inquiry is whether that ordinary observer "would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). Generally, the "ordinary observer"

refers to the "principal purchaser" of the relevant product. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015). Importantly, the ordinary observer test is applied with a view to the "patented design in its entirety," and "[m]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs*, 598 F.3d 1303 (internal citations omitted).

As described above, and as demonstrated in the Complaint and supporting declarations and exhibits, the Accused Products have at most only minor differences from the patented design. From the perspective of an ordinary observer, they are blatant copies of the patented design and of each other. Indeed, the striking similarities between all the infringing products suggest that subsets come from the same supplier or group of suppliers working in concert. *See L.A. Gear, Inc. v. Thom McAn*, 988 F.2d 1117, 1126 (Fed. Cir. 1993) ("Design patent infringement relates solely to the patented design and does not . . . allow of avoidance of infringement by [changed] labelling.").

Exhibit 1 to the Complaint contains a screenshot of each of the Defendant Internet Stores and depicts an image of each Accused Product. Compl. ¶¶ 30, 39, Exh. 1. Each Accused Product in Exhibit 1 ranges from identical to substantially the same in the eyes of the ordinary observer and all infringe Plaintiff's '469 Patent. Below is a reproduction of FIG. 1 of Plaintiff's '469 Patent:



**FIG. 1**

Below is a sample of Accused Products identified in Schedule A and Exhibit 1 to the Complaint:



ASIN B0BPC9369S

ASIN B0BXKBJ2FC

ASIN B0BN7B3VVT

ASIN B0CCVNJ6VS

The striking similarity between Plaintiff's patented design and these Accused Products is no accident. An ordinary observer reviewing the designs would be deceived into believing that the sample shown above—and all the Accused Products—are the same as the patented design.

In view of the above, Plaintiff submits that it is likely to prevail on its design patent infringement claim.

2.    <u>Plaintiff Will Be Irreparably Harmed Without an Injunction</u>

Irreparable harm encompasses various types of difficult-to-quantify losses that cannot be adequately remedied with a monetary award, including lost sales and erosion in reputation and brand distinction. *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013). The fact that a patentee is still able to generate sales and profit in the face of infringement "does not automatically rebut a case for irreparable injury." *Id.* Here, Plaintiff has suffered lost market share, price erosion, reputational harm, and loss of brand distinction because of

Defendants' infringement. This harm continues to accrue as Defendants' activities continue, and Plaintiff cannot be made whole with monetary damages.

a) Plaintiff Has—and Will Continue To—Lose Market Share

"It is well-established that a movant's loss of current or future market share may constitute irreparable harm." *Grand River Enter. Six Ntns., Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007). Indeed, "[i]n a competitive industry where consumers are brand-loyal . . . loss of market share is a potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Novartis*, 290 F.3d at 596 (internal quotations and citations omitted).

In addressing the same question, this Court has also found that decreased sales and the loss of a market leadership position is sufficient to show irreparable harm. *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, 11 Civ. 7211 (PGG), 2012 U.S. Dist. LEXIS 103864 at *52-53 (S.D.N.Y. July 24, 2012). In *Hutzler*, the plaintiff sold Garlic Saver and Onion Saver products that were both protected by design patents. *Id*. at *2. Its eye-catching designs were popular with consumers and made up 63% of its company sales. *Id.* When the defendant entered the market with infringing products, sales declined 21% over a year and continued to fall. *Id.* The plaintiff sought a preliminary injunction to stop the sales of defendant's infringing products based on its "decreased market share and loss of market leader position." *Id*. at 52.

Upon reviewing evidence of plaintiff's falling sales and loss of customers who switched to competing, infringing products, this Court summarily applied the precedents to hold that there was sufficient basis to show irreparable harm. It reasoned that "[t]he effect of [plaintiff's] lost clients is difficult to quantify, and [it] may not be able to recover these lost relationships" and that "if [defendant] is not enjoined, [plaintiff] will lose its market leadership." *Id*. at 53.

Similarly, here, Plaintiff has invested considerable resources in product development and marketing to earn its place as a leader in the car charger adapter market. In so doing, Plaintiff enjoyed significant success with the product, reaching more than $6M in sales in just over two years. Maiwald Decl., ¶¶ 6, 14. Since Defendants started selling the Accused Products, Plaintiff has lost significant market share. Maiwald Decl., ¶¶ 13-16. To regain its lost market position, Plaintiff now must compete with products that infringe its patented design but did not make the same initial investment that Plaintiff did. If not immediately enjoined, Defendants will unfairly establish a leadership position in the market by wrongfully capitalizing on Plaintiff's investment and ingenuity.

b) Plaintiff's Prices Have Been Eroded and Will Be Further Eroded

The entry of Defendants' cheaper, infringing products is likely to continue to cause irreparable price erosion of electric car charging adapters. *Mint, Inc. v. Iddi Amad*, 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813 at *10 (S.D.N.Y. May 9, 2011) ("[T]he loss of pricing power resulting from the sale of inexpensive 'knock-offs' is, by its very nature, irreparable."); *See Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (testimony of likelihood of price erosion and loss of market position sufficient to find irreparable harm).

After making a substantial initial investment in marketing, research, development, operations, and safety testing and certifications, Plaintiff launched its electric car charging adapter at a price point of $159.99. Maiwald Decl., ¶ 16. Before long, Defendants—unencumbered by the same upfront costs—entered the market with infringing products, driving the market price down to $66.95. *Id*. Promotion and sales of the infringing products has pressured Plaintiff to lower its prices. The continued decline in prices, considered alongside Plaintiff's lost market share, makes it improbable that Plaintiff will recover its investment if a preliminary injunction is not issued.

-12-

c) Plaintiff Will Continue to Suffer Harm to Its Reputation

The continued sale of infringing products to consumers is also causing irreparable harm to Plaintiff's reputation as a seller of high-quality products. The Federal Circuit has recognized that loss of goodwill and damage to a patentee's reputation caused by infringement to be irreparable harm. *Reebok Int'l Ltd. V. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure."). This is so even if there is no consumer confusion between the products or their sellers. *Douglas Dynamics*, 717 F.3d at 1344 ("Even absent consumer confusion . . . there can still be harm to a company's reputation[.]").

Plaintiff's pre-suit investigation shows the undeniable and publicly recognizable similarities between the designs of the patented product and the Accused Products. Accordingly, the public is likely to continue to confuse the two, or mistakenly conclude that Plaintiff is somehow involved in the design or manufacture of the Accused Products. This mistaken belief alone—that Plaintiff licensed its design to entities producing low-quality or possibly dangerous products, sold at lower prices—may signal to consumers that Plaintiff is departing from its strict adherence to safe and high-quality products. *See CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 893 F. Supp. 508, 524 (D. Md. 1995), *aff'd*, 92 F.3d 1203 (Fed. Cir. 1996) (finding that sales of accused product in the discount trade would diminish the patentee's cultivated, high-quality image).

Plaintiff has invested considerable resources to earn and establish its reputation. Each day that Defendants' infringing products are sold, irreparable harm continues to accrue to Plaintiff's hard-earned reputation.

d) Plaintiff Will Continue to Lose Brand Distinctiveness

Design exclusivity is an additional component of a company's reputation. *See Douglas Dynamics*, 717 F.3d at 1344-45. Plaintiff's patented design is exclusive to its line of Lectron-branded products. It has not licensed its patented design to any other entity, and no other manufacturers or sellers are authorized to use it. Through Defendants' ongoing infringing acts, they have destroyed the market exclusivity, brand distinctiveness, and commercial lure of Plaintiff's charging adapter products.

This same reasoning is applicable here. As discussed above, Plaintiff has made arduous efforts to develop a quality product and build a strong reputation. As Defendants' cheaper and lower quality products continue to embody the same "body style" and features, they appear to style themselves as the "Mercedes at half the price." Meanwhile, the brand distinction and commercial lure that Plaintiff has labored to build continue to diminish.

e) A Causal Nexus Exists Between the Infringement and Harm

The Federal Circuit noted that a patentee seeking an injunction must establish a "causal nexus" between the alleged infringement and irreparable harm. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013) ("*Apple III*"). This requires a showing that "the infringing feature drives consumer demand for the accused product." *Id*. at 1364. Recognizing, however, the complexity of consumer preferences and the flexibility of equity, the court held that a patentee need *not* "show that a patented feature is the one and only reason for consumer demand." *Id.*

This is especially true in situations like this one, where Plaintiff's patent claims an entire charging adapter body—not a minor feature. The Federal Circuit recognizes this important distinction. *See id*. at 1366 (discussing likelihood of irreparable harm when the claimed design of an entire tablet computer was likely infringed).

-14-

Here, Plaintiff's continuous loss of market share and brand distinctiveness, its lost profits due to price erosion, and the harm to its reputation are all attributable to the Defendants' market entry with infringing products. The Defendants' own advertising establishes the necessary "connection" for injunctive relief. *Apple III*, slip op. at 19-20.

### 3. The Balance of Hardships Favors Plaintiff

A court must consider the balance of hardships before issuing a preliminary injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Factors considered in this inquiry include the "parties' sizes, products, and revenue sources." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) (citation omitted). Here, the balance of hardships tips decisively in Plaintiff's favor. In contrast to the multiple irreparable harms that Plaintiff has and continues to sustain, Defendants will suffer no real harm if a preliminary injunction issues.

While Plaintiff invested considerable time and money in launching its adapter, Defendants, on the other hand, focus their businesses on wrongfully making profits by stealing others' designs. *See Rosen Entm't Sys., LP v. Eiger Vision*, 343 F. Supp. 2d 908, 921 (C.D. Cal. 2004) (finding harm to the non-movant as less significant based on the wide range of non-accused products sold by the non-movant and the fact that the accused product had only been sold for a few months). Other than displaying the Accused Products on their online storefronts, there is no evidence that Defendants have invested in marketing.

The fact that Defendants may be smaller than Plaintiff (Plaintiff is unable to determine) is insufficient to shift the balance of hardships. *See Robert Bosch v. Pylon Mfg. Corp*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("A party cannot escape an injunction simply because it is smaller than the patentee[.]"). More importantly, Defendants could have chosen to compete in the market with their own unique designs. Instead, Defendants chose to copy the Plaintiff, and therefore assumed the risk of being enjoined. S*ee Robert Bosch*, 659 F.3d at 1156 (citing *Windsurfing Int'l, Inc. v. AMF,*

*Inc.*, 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain of an injunction against continuing infringement destroys the business so elected.")).

4. A Preliminary Injunction Will Not Disserve Public Interest

There is a strong public policy favoring the enforcement of patent rights. *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). The public is enriched by the availability of diverse and innovative designs, which aids in decision making and avoids deception, mistake, and confusion. In the electric car charging adapter market, consumers have choices among a variety of distinctive designs. Although competition serves the public interest, "cheap copies of patented inventions have the effect of inhibiting innovation and incentive." *Douglas Dynamics*, 717 F.3d at 1346. The public interest therefore favors enforcement of Plaintiff's design patent rights, particularly against entities, like Defendants, who build their business on infringing products.

**C.    The Defendant Internet Stores and Related Assets Should Be Frozen**

A temporary restraining order which, in part, restrains Amazon from providing services to Defendants' Internet Stores is warranted and necessary because the continued offering for sale and/or sale of the Accused Products on their respective Amazon storefronts will result in immediate and irreparable injury to *Plaintiffs. Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15 Civ. 1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

Plaintiff further requests an asset freeze order granting Plaintiff information regarding the location of Defendants' assets, the attachment of Defendants' assets, and an injunction preventing the transfer from or to Defendants' financial accounts by their financial institutions and any third-party service providers.

-16-

To halt additional infringing sales, Plaintiff further requests suspension of Defendants' Internet Stores or, in the alternative, de-listing of the product listings at issue.

Considering the nature of Defendants' infringing products, and Plaintiff's showing that they have a high likelihood of succeeding on the merits of their claims, Plaintiff will be entitled to an equitable accounting of Defendants' profits from their sales of the Accused Products. *See* 35 U.S.C. § 289 (allowing for recovery of an infringer's profits in cases of design patent infringement). Indeed, district courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted).

An asset freeze here is warranted because Defendants operate in unknown locations to manufacture, sell, advertise, and otherwise commercialize the Accused Products to U.S. customers. Maiwald Decl., ¶¶ 21-22. Plaintiff believes that it is likely that Defendants will be able to—and likely will—hide and dispose of their assets. Maiwald Decl., ¶ 24. Plaintiff respectfully requests that this Court freeze Defendants' assets and financial accounts for the purpose of preserving Defendants 'funds and ensuring that a meaningful accounting of their profits can be made.

### D.    Service of Process by E-mail and/or Electronic Publication Is Warranted

Plaintiff requests this Court's authorization to serve process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents by sending an e-mail to any e-mail addresses provided for Defendants by third parties that includes a link to said website. Plaintiff submits that providing notice via electronic publication and/or e-mail is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously.

Electronic service is appropriate and necessary in this case because available information on Defendants' physical addresses is inherently unreliable or unavailable. Maiwald Decl., ¶¶ 21-22. Defendants all operate through Amazon and receive payments through Amazon. Amazon merchants are required to provide a working email address and, upon information and belief, the Defendants are thus all accustomed to utilizing electronic communication for the operation of their respective businesses.  Courts have found that electronic service alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant. *See Sirius XM Radio Inc. v. Aura Multimedia Corp.*, 339 F.R.D. 592, 593 (S.D.N.Y. 2021) (quoting *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021).

As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods. Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in Rio Properties held, "without hesitation," that email service of an online business defendant "was constitutionally acceptable." *Id*. at 1017. Similarly, several courts, including in this District, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id*. at 1018; *see e.g.*, *Cengage Learning*, 2018 WL 2244461, at *5 (S.D.N.Y. Jan. 17, 2018) (finding email service appropriate under Rule 4(f)(3)); Kipling Apparel Corp., 2016 WL 8814345, at *3 (ordering email service pursuant to Rule 4).

Allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the Defendants to utilize an electronic e-commerce platform and payments system to operate each Defendant Internet Store.

Plaintiff has cause to suspect the Defendants are mainly residents of China. Maiwald Decl., ¶ 22. The United States and China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). The Hague Convention does not preclude service by email or electronic means, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit e-mail service. *See Hangzhou Chic Intelligent Technology Co. v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) ("For these reasons, the Court finds it is inappropriate to interpret China's objections to postal service under the Hague Convention as encompassing service by email.").

The proposed Temporary Restraining Order defines a procedure for service that is calibrated to assure that each Defendant receives prompt notice of this Action.

### E.    Expedited Discovery is Warranted in This Case

A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage*, 2018 WL 2244461 at *4 (*citing Next Phase Distrib.*, 284 F.R.D. at 171.)

Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); AdMarketplace, Inc. v. TeeSupport Inc., 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases). As

-19-

described above, Defendants are selling the infringing EV Adapters using Amazon, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment-system accounts Defendants use for their infringing sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants and is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). As Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### F.    A Limited Bond Should Secure the Injunctive Relief

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. Courts have "wide discretion" on whether to require the posting of a bond upon issuance of a temporary restraining order or preliminary injunction and the amount thereof." *Conopco, Inc. v. 2026 Third Realty, LLC*, 22 Civ. 3480 (AT) 13 (S.D.N.Y. Apr. 29, 2022) *quoting Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

-20-

Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than One Thousand U.S. Dollars ($1,000.00). *See, e.g., Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21 Civ. 370, 2021 WL 1249631, at *2 (S.D.N.Y. Apr. 5, 2021) ($1,000 bond); *Cengage*, 2018 WL 2244461, at 6 ($2,500 bond).

**IV.    CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests this Court enter a Temporary Restraining Order and related relief in the form submitted herewith.


Dated: April 19, 2024                    Respectfully submitted,

                                         BOAG LAW, PLLC

                                         By: /s/David A. Boag

                                         David A. Boag (DB9899)
                                         447 Broadway, Suite 2-270
                                         New York, NY 10013
                                         (212) 203-6651
                                         dab@boagip.com

                                         *Attorneys for Plaintiff Dropcases Ltd.*