## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DROPCASES, LTD., <br>                 Plaintiff, <br>     v. <br><br> THE PARTNERSHIPS AND <br> UNINCORPORATED ASSOCIATIONS <br> IDENTIFIED ON SCHEDULE "A" <br><br>                 Defendants. | Case No. 24-cv-02589-JLR <br><br> JURY TRIAL DEMANDED |

**DECLARATION OF CHRISTOPHER E. MAIWALD IN SUPPORT OF PLAINTIFF'S
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Christopher E. Maiwald, declare as follows:

1.      I am Managing Director and Founder of Dropcases Ltd. ("Plaintiff" or "Dropcases"), a limited company duly organized and existing under the laws of the Special Administrative Region of Hong Kong. I make this affidavit in my capacity as Managing Director and Founder of Plaintiff and based on my personal knowledge of the facts set forth herein.

2.      The Plaintiff is in the business of designing, manufacturing, and selling consumer electronic products, primarily through e-commerce platforms such as Amazon. Among these products, Plaintiff sells charging adapters for electric vehicles.

3.      Electric vehicles are equipped with a connector for connecting the vehicle to a power source. For example, Tesla vehicles use a standard known as NACS, which is primarily designed for charging using Tesla's network of so-called "destination chargers." Another popular charging system is SAE J1772, which is used with non-Tesla elective vehicles.

4.      In 2021, Plaintiff recognized that it would be desirable to provide a product that allowed SAE J1772-equipped vehicles to access Tesla's growing destination charger network.

5.     On approximately August 23, 2021, Plaintiff released its "Tesla to J1772 Charging Adapter" (the "Product") under the brand name LECTRON. An image of the Product is shown below.



6.     Since January 2022, the Product has been available for sale on Amazon, and in the period up to and including March 2024, it has sold 43,141 units, generating sales revenue of $6,775,689 and a profit of $3,049,060.

7.     The planning and design process for the Product involved meticulous effort. Prior to launch, Plaintiff executed a comprehensive development and marketing strategy that included spending $863,944 on Amazon Ads between August 2021 and March 2024, and $611,000 on Google Ads between August 2021 and March 2024. The Plaintiff dedicated $124,000 to product development and tooling, focusing on enhancing the previous generation of the Product into a more ergonomic and stylized design. The design selection process was informed by customer feedback.

8.    Because the Product is intended for electrical vehicle charging, safety and reliability are paramount. Plaintiff obtained the necessary quality and safety certifications from the American testing agency SGS to confirm UL 2251 compliance. The Plaintiff invested in safety and reliability certification and testing, allocating $44,000 specifically for obtaining certifications from respected laboratories such as SGS ($24,000) and UL ($20,000) to ensure compliance with industry standards.

9.    In total, Plaintiff invested more than $1.6M in the design, development, testing, and marketing of the Product.

10.    The design process for the Product was centered on crafting a stylish and attention-grabbing design, aiming to distinguish it from other competing designs. While functionality and safety were critical considerations in the design of the Product, so too were the aesthetics of the design.

11.    To protect its original design, on May 17, 2022, Plaintiff filed U.S. App. Serial No. 29/864,275. The USPTO granted U.S. Patent No. D1,018,469 (the "'469 Patent") on March 19, 2024. The subject matter of the '469 Patent was invented by me and German Chan, Dropcases' Head of Operations.

12.    Plaintiff owns all right, title, and interest in the '469 Patent by an assignment dated August 18, 2023, and recorded with the US Patent and Trademark Office at reel/frame 064630/0584.

13.    Since August 2021, Plaintiff has sold and distributed the Product to customers in the United States through e-commerce platforms, including Amazon, Best Buy, The Home Depot, Lowe's, and Walmart. By August 2022, the Product sold 2,300 units per month and reached third position in Amazon's best-seller rankings.

14.     Additionally, the Plaintiff has established partnerships with America's leading retailers such as Best Buy, Walmart, The Home Depot, and Lowe's, further demonstrating its presence in the market. Moreover, the Plaintiff serves as a supplier to esteemed companies such as General Motors and Ford, reinforcing its status as a reputable entity within the industry.

15.     The Product's success was largely driven by its eye-catching ergonomic design. At its peak, the Product generated a monthly revenue of $386,400 on Amazon and a monthly profit of $173,880. Notably, the Plaintiff has not entered into any licensing agreements regarding the patent or design with other companies or brands.

16.     Starting around December 2022, sales of the Product sharply declined due to the influx of counterfeiters entering the market. Unauthorized counterfeit adapter listings on Amazon subsequently drove the market price price down to $66.95, while the Plaintiff maintained a price point of $159.99. This price discrepancy led to a significant loss in sales revenue opportunity, amounting to over $400,000 per month, and a decrease in profit opportunity of over $180,000 per month.

17.     Consequently, operations were adversely affected, with available data suggesting that the Plaintiff could have potentially saved at least 50% of their advertising expenditure, or around $400,000.

18.     Due to the substantial investments in development and marketing, the Product sells at a higher unit price than counterfeit products that have reaped the benefits of Plaintiff's investments. In conversations with some of its larger customers, Dropcases has received pressure to reduce its prices with certain of Defendants' products cited as exemplars.

19.     Since the '469 Patent issued on March 19, 2024, these trends have accelerated . It is my belief that Defendants' infringement will cause further decline in Plaintiff's market share,

erode prices for the Product, and otherwise diminish Plaintiff's extensive investment in the design, sales, and marketing of the Product.

20.    At least one national U.S. retailer of electric vehicle accessories has intimated that Dropcases' in-store program could be compromised if it did not reduce its prices to come closer to the pricing offered by certain of the Defendants. The counterfeit products directly copy the Product's original design.

21.    Upon learning of infringement, Plaintiff attempted to identify Defendants' physical addresses by reviewing information in the Defendants' online stores. Most of the Defendants, if not all, have obfuscated their physical location on their Amazon storefronts.

22.    I believe that many of the Defendants are in China because addresses that are available indicate such, and often Chinese characters appear in the product listings, individual owners' names, or available addresses. While informative, these addresses are inherently unreliable. The Plaintiff has reported counterfeit listings using the Amazon Brand Registry Report a violation tool but has not directly contacted the counterfeit sellers.

23.    It is my belief that the Defendants use many of the same suppliers to sell infringing products in the United States, due to similarities between the listings which appear to be informed by a shared specification sheet.

24.    It is my belief that because of the informal nature of the Defendants' operations, it is highly likely that they will transfer, conceal, and/or destroy (1) the counterfeit products; (2) the means of making or obtaining the counterfeit products; (3) business records; and (4) any and all other evidence relating to their infringing activities. Moreover, Defendants will be able, and likely will, hide and dispose of their assets. Counterfeiting networks operated by Defendants are agile and adaptable, often utilizing intricate supply chains and exploiting online marketplaces'

vulnerabilities. They engage in fraudulent practices, mimic legitimate products, and operate across multiple jurisdictions to evade detection and maximize profits. Overall, these networks rely on deception, concealment, and exploitation of legal loopholes to sustain their illicit activities.

25.     All of the infringing products are available for sale, ready to ship, or have shipped to the State of New York, County of New York.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this __17__ day of April 2024

*Christopher Maiwald*
Christopher E. Maiwald