UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DROPCASES, LTD., <br>       Plaintiff, <br> v. <br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A <br>       Defendants. | Case No. 24-cv-02589-JLR <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S CONSOLIDATED REPLY TO THE RESPONSES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

DROPCASES, LTD. ("Plaintiff") submits this Consolidated Reply to: (1) the Response in Opposition to Plaintiff's Motion for Preliminary Injunction by Defendants ZANCH, REEVAA, and wigoo (Dkt. 30, the "ZANCH Response"); and (2) the Response in Opposition to Plaintiff's Motion for Preliminary Injunction by Defendants EVDANCE and Seguma (Dkt. No. 31, the "EVDANCE Response").

The ZANCH Response and EVDANCE Response fail to provide new evidence that establishes that Plaintiff is unlikely to prevail on its substantive claim of patent infringement. As shown and discussed below, Plaintiff can demonstrate that the issues raised by these Defendants—whether validity or infringement—lacks substantial merit and that the arguments made in the April 19, 2024 Motion for a Temporary Restraining Order [sealed] warrant the issuance of a permanent injunction.

Defendants' arguments rest on outdated and incorrect caselaw that attempts to impose additional burdens on Plaintiff, and which have been abrogated by the Supreme Court; the application of incorrect tests for analyzing infringement; citation of prior art already considered

by the USPTO during examination of Plaintiff's '469 Patent; and ostensible prior art for which there is substantial evidence that the claimed date (and thus the entire basis for the invalidity argument) is plainly incorrect. Defendants' claims each lack substantial merit and a preliminary injunction remains warranted.

I.     **ARGUMENT**

    A.     **Plaintiff is Likely to Succeed on Its Infringement Claim**

As has been repeatedly stated in the record, in this Circuit, a party seeking to obtain a preliminary injunction must demonstrate (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of a restraining order; (3) that the balance of hardships favors the moving party; and (4) that the public interest will not be disserved if a restraining order issues. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020) (citing *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015)). The "standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).

Defendants argue in their Responses that Plaintiff's Moton fails on factors (1) and (2). As demonstrated below, the Responses fail to produce any evidence that would upend the '469 Patent's presumption of validity and meet the very high clear and convincing burden for patent invalidity. Further, the significant harm suffered by Plaintiff in the form of reputational damage and price erosion damage cannot be remedied by money damages alone, making a preliminary injunction warranted.

       1.       <u>Design Patent Infringement Is Measured Through the Lens of the Ordinary Observer</u>

"[A] design patent is infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Samsung Electronics Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 525 (1872). The proper inquiry is whether that ordinary observer "would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). Generally, the "ordinary observer" refers to the "principal purchaser" of the relevant product. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015).

Importantly, the ordinary observer test is applied with a view to the "patented design ***in its entirety***," and "[m]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs*, 598 F.3d at 1303 (internal citations omitted; emphasis added). Proceeding through an accused design to identify every possible trivial difference is thus not the standard. Rather, the infringement test requires "a side-by-side view of the drawings of the [claimed design] and the accused product []" to compare "their overall effect," not their individual elements. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed Cir 2010); *see also David A. Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).

The ordinary observer test is the *sole* test for determining infringement of a design patent.[1] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d at 670 (citing *Gorham Mfg. Co. v. White*, 81 U.S.

---

[1] Defendant EDVANCE argues that the now-abrogated "point of novelty test." (Dkt. No. 31 at pp. 6-7) is a second prong that Plaintiff must meet after the ordinary observer test. This is <u>*not*</u>

511, 528 (1871)). In *Egyptian Goddess*, the Federal Circuit, sitting *en banc*, had occasion to determine the continued relevance of prior art in design patent infringement even without an explicit second test. The prior art may be relevant as the ordinary observer test is conducted through the eyes of an observer familiar with the prior art. *Egyptian Goddess*, 543 F.3d at 677.

    **B.**    **Plaintiff Remains Likely to Succeed on its Claims of Infringement of the '469 Patent**

Defendants make various arguments about noninfringement, which will be discussed (and refuted). Applying the correct legal principles, it is clear the Plaintiff is likely to prevail on its claims of infringement.

    1.    <u>Plaintiff's Novel Design as Shown in the '469 Patent</u>

Below are FIGS. 1 and 2 from the '469 Patent that have been annotated to highlight certain elements that contribute to the overall visual effect of the design. *Crocs, Inc.*, 598 F.3d at 1304.



**FIGS. 1 and 2 of the '469 Patent**

---

the correct legal standard to be applied in this case and is at odds with *Egyptian Goddess* and dozens of cases since. *See, e.g.*, *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1237-8 (Fed. Cir. 2009); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1384 (Fed. Cir. 2009); *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012). Plaintiff thus need only prevail on the ordinary observer test to establish infringement of the '469 Patent.

As shown above, individual elements contributing to the visual impression include a flat back E transitioning into a raised button C before sharply dropping downward. Vertical sidewalls D are even and extend backward to a flat tail portion H. A sharp bend A is present in the underside about a middle area and is a defining feature pf the impression created by the design. A front hook F is contoured downward from the spine E and emerges from flat sidewall G. These elements collectively convey a design that is compact and curved, ergonomic, and with forward motion towards the front end and hook.[2]

        2.        <u>Plaintiff is Likely to Succeed on its Claims Against Defendants ZANCH and wigoo</u>

Below is a side-by-side comparison of Defendants ZANCH and wigoo's accused product with FIG. 2 of the '469 Patent. ZANCH and wigoo are being treated together because they appear identical.

ZANCH/wigoo presents an overall impression very similar to that of the '469 Patent with the same overall curvature from left to right. The sidewall contour tracks the '469 Patent as does the overall curvature along the spine of the product. The button extends all the way to the front rather than exist as a single segment though the front hook is contoured just like the '469 Patent. An underside button with beveled edges likewise follows the '469 Patent's design.

---

[2] This summary of the features that comprise the overall impression of the '469 Patent's design is not intended as a formal claim construction. Plaintiff reserves the right to provide a formal construction when instructed by the Court.



Defendants ZANCH/wigoo do not make a non-infringement argument other than invalidity so Plaintiff's original position on its likelihood of success on the merits is unrefuted.

        3.       <u>Plaintiff is Likely to Succeed on its Claims Against Defendant REEVAA</u>

Defendant REEVA's accused product likewise tracks the overall contoured impression conveyed by the '469 Patent with the same general curvature from left to right. While the sidewall contour has more of a break than the '469 Patent, the overall curvature along the spine of the product is the same. The front hook is contoured in an identical configuration to the '469 Patent. An underside button with beveled edges likewise follows the '469 Patent's design.



| Defendant REEVA's Accused Product | FIG. 2 of Plaintiff's '469 Patent |
|---|---|

Defendant REEVA does not make a non-infringement argument other than invalidity so Plaintiff's original position on its likelihood of success on the merits is unrefuted.

4. Plaintiff is Likely to Succeed on its Claims Against Defendants EVDANCE and Seguma

EVDANCE/Seguma's accused product preseents the same curved and compact visual impression shown in the '469 Patent. Here, the accused product likewise tracks the overall contoured impression conveyed by the '469 Patent with the same general curvature from left to right. While the sidewall contour has more of a break than the '469 Patent, the overall curvature along the spine of the product is the same. The front hook is flatter than the configuration in the '469 Patent but as part of the overall design, it coneys the same "lurching forward" visual impression of the '469 Patent. An underside button with beveled edges likewise follows the '469 Patent's design. While there are some specific differences here, "[m]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs*, 598 F.3d 1303. Rather, the ordinary observer test is applied with a view to the "patented design in its entirety," id., which when done here, conveys an identical visual impression.



The Defendant points to specific distinctions in its design (e.g., the ribbed grip and sidewall cutout), neglecting the overal visual impression of the device. This hyperspecific analysis is the opposite of what the Federal Circuit has instructed. The correct infringement test requires "a side-by-side view of the drawings of the [claimed design] and the accused product []" to compare "*their overall effect*," *not their individual elements*. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d at 1304 (emphasis added).

    **C.**    **Defendants Validity Claims Fall Short of the Required Showing**

        1.    <u>Legal Standards Relative to Patent Validity</u>

Patents enjoy a statutory presumption of validity under 35 U.S.C. § 282. Design patents issued under 35 U.S.C. § 171 enjoy the same presumption of validity as utility patents under 35 U.S.C. § 282. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). Consequently, the burden of proving invalidity rests with the defendant, who must provide clear and convincing evidence. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015); *Microsoft v. i4i Ltd. P'ship*, 564 U.S. 91, 95-96 (2011).

To invalidate a design patent on the grounds of anticipation and overcome the presumption of validity, the challenger must show that a single prior art reference is "identical in all material

respects" to the claimed invention *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001).[3]

Obviousness of a design patent may occur when the claimed design would have been obvious to a designer of ordinary skill, not an ordinary observer. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012).

The Federal Circuit employs a two-step approach to determine the obviousness of a design patent. First, the court must identify a single "primary reference," that is, a prior art reference with "basically the same" design characteristics as the claimed design. *High Point Design, LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1311 (Fed. Cir. 2013) (citing *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996). To perform this step, a court must start by translating the patented design into a detailed verbal description. *Id*. at 1314. Upon identifying the primary reference with "basically the same" characteristics described, a court must communicate its reasoning for why the primary reference is similar to the patented design. *Id.*

Once a primary reference is identified, secondary references may then be used to modify it to create a design with the same overall visual appearance. *Id*. at 1311 (citing *Durling*, 101 F.3d 100, 103 (Fed. Cir. 1996)). The ultimate inquiry when viewing the combined references is "whether the claimed design would have been obvious to a designer of ordinary skill who designs

---

[3] Defendant EDVANCE argues in its brief (p. 3) that a design patent is anticipated if "in the eye of an ordinary observer, giving such attention as a purchaser usually gives," its design is "substantially the same" as that of the prior art. This is <u>not</u> the law. Anticipation is not simply the reverse of infringement and the case cited in support of that proposition by EDVANCE does not address claims of anticipation or invalidity. *See Samsung Electronics Co., Ltd. v. Apple, Inc.*, 137 S. Ct. 429, 196 L. Ed. 2d 363 (2016). The "substantially the same" invalidity standard appears to be a creation of Defendant.

articles of the type involved," as distinct from an ordinary observer. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012).

### 2. The ZANCH Response Claims that the '469 Patent is Invalid Based on Prior Art Considered by the Examiner During Prosecution—and Dismissed

During prosecution of the '469 Patent, the Examiner was aware of Zendesk, reviewed it, and ultimately issued the '469 Patent, nonetheless. Boag Decl., Exh. A. In other words, the Examiner reviewing Plaintiff's application last August recognized the ornamental differences between Zendesk and the Plaintiff's novel design and approved the application.

Specifically, the Examiner issued a rejection of the claim on August 3, 2023 (Boag Decl., Exh. A) based on a product owned by Plaintiff and ZENCAR. Applicant responded to the rejection noting that it owned the product cited in the office action, thus removing it as citable prior art. (Boag Decl., Exh. B). The Examiner then allowed the application. (Boag Decl. ¶ C). ZENCAR was not even raised as a prior art reference for anticipation or in its own right, the Examiner correctly seeing that it had no bearing on Plaintiff's novel design. The '469 Patent issued on March 19, 2024.

Exhibit D to the Boag Declaration contains a summary of the key distinctions between ZENCAR and the '469 Patent, confirming that the designs are not "identical in all material respects."

### 3. The EVDANCE Response Likewise Does Not Establish Anticipation

EVDANCE argues that Plaintiff's '469 Patent is anticipated by three prior art references labeled as Exhibit 1, Exhibit 2, and Exhibit 3.

EDVANCE Exhibits 1 and 3 Are Nearly Identical to ZENCAR and Plaintiff incorporates its arguments related to ZENCAR with respect to EDVANCE Exhibits 1 and 3. For the same reasons as with ZENCAR, Exhibits 1 and 3 do not anticipate the '469 Patent.

With respect to EDVANCE Exhibit 2, Exhibit D to the Boag Declaration contains a chart demonstrating why EDVANCE Exhibit 2 fails to meet the "nearly identical" standard for anticipation of the '469 Patent.

### 4. The Dates of the EDVANCE Exhibits Are Not Reliable

Concerning Exhibit 2 of EDVANCE, EVVANCE claims a date of public use or first sale of October 24, 2018 (Dkt. No. 31 at 4), apparently because that is the date attributed to the first customer comment on the website. There are numerous problems with this claimed date and the evidence suggests that it is not credible.

Amazon's listing page for the same product (Boag Decl., Exh. E) lists a first sale date of November 4, 2023 and contains no reviews prior to January 23, 2024. (*Id.*). A search of the Newpow website on the Wayback Machine does not contain any content dating to 2018 and a 2023 archive does not show any EV chargers at all. (Boag Decl., ¶ 9). Despite a claimed October 24, 2018, the domain for the company shows a date of creation of December 3, 2018, six weeks *after* the date attributed to the first customer comment on the website. (Boag Decl., Exh. F).

The November 4, 2023 date is also consistent for the trademark application filed by the seller of the Exhibit 2 adapter. That company's third application for NEXPOW was filed on October 3, 2023 on an *intent-to-use* basis (i.e., the company did not claim commercial use), covering, "[v]ehicle charging stations for electric bicycles, cars, motorcycles, and boats." *See* U.S. Trademark App. No. No. 98208321.

The October 24, 2018 lacks any credibility and crumbles in the fact of substantial evidence to the contrary. Exhibit 2 is not prior art to the '459 Patent. Such an evidentiary showing would not meet the clear and convincing standard and cannot suggest that Plaintiff is unlikely to prevail on the merits.

 5. Obviousness Has Not Been Seriously Alleged by Any Defendant

Defendant wigoo purports to claim that the '469 Patent is invalid as obvious under 35 U.S.C. § 103:

> Between Plaintiff's '469 Patent (Figure 5 above) and ZENCAR NCAS' product (Figure 2 above), there seems to have no difference from the vantage of an ordinary designer. Thus, the modification, if any, is minor and subject to the bar of obviousness.

Dkt. No. 30 at pp. 4-5.

This purported claim of obviousness does not state who the ordinary observer is. While the claim identifies a primary reference (ZENCAR), it does not offer any proposed verbal description of the claim, identify what elements are missing from the primary reference, or identify a secondary reference to fill in those gaps. *High Point Design,* 730 F.3d at 1311 (Fed. Cir. 2013).

Defendant has not made a claim for obviousness that is possible to counter. Rather, Defendant has simply claimed that the '469 Patent "is obvious" without more. Such a non-argument does not counter that Plaintiff will likely succeed on the merits because its patent is valid.

EVDANCE and Seguma do not make any arguments concerning obviousness under 35 U.S.C. § 103. Plaintiff therefore reserves its right to address the same should that position change.

**D.     Plaintiff Will Be Irreparably Harmed Without an Injunction**

Irreparable harm encompasses various types of difficult-to-quantify losses that cannot be adequately remedied with a monetary award, including lost sales and erosion in reputation and brand distinction. *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1344 (Fed. Cir.

2013). Plaintiff restates its argument that its loss of market share, price erosion, and damage to reputation necessitate a continued injunction.[4]

## II.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests this Court enter a Preliminary Injunction.

Dated: June 14, 2024                            Respectfully submitted,

                                                          BOAG LAW, PLLC

                                                          By: /s/David A. Boag

                                                          David A. Boag (DB9899)
                                                          447 Broadway, Suite 2-270
                                                          New York, NY 10013
                                                          (212) 203-6651
                                                          dab@boagip.com

                                                          *Attorneys for Plaintiff Dropcases Ltd.*

---

[4] Plaintiff notes that since its application for the temporary restraining order, Amazon has provided information on Defendants' sales of the accused products and Plaintiff is now better able to determine the scope of infringement by individual sellers and tailor its requests for asset and account freezes. Plaintiff is amenable to an adjustment of the Amazon restrictions in a manner that protects its interests and the ability to address infringement by offshore sellers with no U.S. assets beyond Amazon.